IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROGER J. McCONKIE, RECEIVER FOR MADISON REAL ESTATE GROUP, LLC AND ITS RELATED ENTITIES,<br><br>Plaintiff,<br><br>v.<br><br>RICE PROPERTIES, LARRY RICE, an individual, MATTHEW SEFCIK, an individual, QUEST REAL ESTATE, ELLIE BELVILLE, an individual, and TRANS LENDING CORPORATION,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:09cv275<br><br>Judge Clark Waddoups |

## INTRODUCTION

Before the court are Plaintiff's motion for summary judgment against Defendants Rice Properties and Larry Rice (referred to collectively as "Rice Properties") (Dkt. No. 58) and Defendant Rice Properties' motion for summary judgment against Plaintiff (Dkt. No. 60). After carefully reviewing the parties' briefs and hearing oral arguments on the motions, the court, for the reasons stated below, DENIES Plaintiff's motion for summary judgment and GRANTS Rice Properties' motion for summary judgment.

## FACTUAL BACKGROUND

The parties have stipulated to the following facts. Plaintiff Roger J. McConkie is the Receiver for Madison Real Estate Group, LLC and its related entities (referred to collectively as "Madison"). From 2005 to 2007, Madison was operated as part of a Ponzi scheme run by its

principals, Richard Ames Higgins, Brandon S. Higgins, and Allan D. Christensen (the "Madison principals"). The Madison principals solicited investments on behalf of Madison by guaranteeing monthly returns and quarterly bonuses based on the performance of certain apartment complexes located in Oklahoma and Texas. Madison used investor money to purchase more than twenty apartment complexes, which were then resold to several limited partnerships for more than the original purchase price. Each limited partnership consisted of Madison, as the general partner, and several of Madison's investors as limited partners.

Without disclosure to its investors and contrary to representations made to recruit new investors, the Madison principals commingled funds raised directly from investors and funds generated from the operation of the apartment complexes to finance additional property acquisitions, meet emergent operating expenses for different properties, pay certain mortgages, and pay earlier investor returns and quarterly bonuses. Neither Madison nor the limited partnerships could have sustained the operation of the scheme or paid the promised monthly returns and bonuses to investors without commingling the funds. Returns to early investors were often paid from new investor money or from profits due to investors in certain limited partnerships that were profitable.

By October 2007, the Ponzi scheme began to unravel and Madison was failing to meet its financial obligations, including mortgage payments on several of the properties it controlled. On March 28, 2008, the Securities and Exchange Commission ("SEC") filed a complaint against Madison and its principals to shut down the operation of Madison and stop the Ponzi scheme. The complaint alleged, *inter alia*, that Madison and its principals committed fraud with respect to the sale or purchase of securities.

On the same day the SEC complaint was filed, Roger J. McConkie was appointed by the court as Receiver for Madison and the limited partnerships controlled by Madison to perpetuate the scheme. The court instructed the Receiver to take control of Madison's funds, assets and properties, and to "take such action as is necessary and appropriate to preserve and take control of, and to prevent the dissipation, concealment, or disposition of any assets." *See* Pl.'s Mem. Supp. Mot. for Sum. J. at 6. (Dkt. No. 59.) Plaintiff asserts that the current action was commenced as part of those efforts.

The current action was filed against Rice Properties and other defendants in relation to two real estate transactions involved in the Madison Ponzi scheme. Rice Properties is a real estate brokerage firm located in Lubbock, Texas and Larry Rice is the firm's licensed broker. Between 2005 and 2007, Rice Properties, through its agent Mathew Sefcik ("Sefcik"), represented the seller in eighteen different transactions in which Madison or its predecessor in interest was the buyer.

The two transactions at issue in this case are (1) the sale of an apartment complex near Lubbock, Texas, called Aspen Village (the "Aspen Village property") and (2) the sale of another apartment complex near Lubbock, Texas, called The Preserve at Prairie Point ("The Preserve property"). Rice Properties represented the sellers and received commissions as a result of both of these transactions.

The Aspen Village property was sold to Madison on August 29, 2007. On that date, the seller of the property took a note from Madison for $2.52 million due on or before October 24, 2007, with an option for a 30-day extension of the due date. The purported purpose of the note was to allow Madison time to obtain commercial financing for the purchase of the property. A warranty deed was executed, transferring the property from the seller to Madison, but was held

3

in escrow pending the payment of the note. The closing statements of the buyer and the seller were prepared and executed, indicating that Rice Properties was to receive $45,500 from the seller's proceeds as commission.

After having trouble securing commercial financing for the purchase of the Aspen Village property, Madison exercised its option to extend the due date on the note for 30 days. The note was eventually paid and Rice Properties received its commission on November 19, 2007.

The Preserve property was sold to Madison on May 14, 2007. On that date, the seller executed a warranty deed transferring the property to Madison, which was then held in escrow pending approval of the transaction by the Department of Housing and Urban Development ("HUD"). The closing statements of the buyer and the seller were prepared and executed, indicating that Rice Properties was to receive $174,000 from the seller's proceeds as commission.

Conditional HUD approval of the transaction was issued on November 2, 2007 and the transaction was finalized on November 22, 2007. At that time, the escrow agent delivered the previously signed deeds to The Preserve property and Rice Properties received its commission from the seller's proceeds.

During the week of October 21, 2007, before Rice Properties received its commission payments from the Aspen Village and The Preserve transactions, Sefcik learned that a national lender would not loan to Madison as a result of prior defaults. Sefcik also learned that Madison's principal, Richard Ames Higgins, was a convicted felon and that Madison was over-consumed with properties, not operating correctly, and in a financial bind. Rice Properties concedes that it was on inquiry notice of Madison's fraudulent scheme as of October 21, 2007.

Plaintiff brought this action to recover the commissions received by Rice Properties after it was on inquiry notice of Madison's scheme pursuant to the Uniform Fraudulent Transfers Act.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). A fact is "material" if it is "essential to the proper disposition of the claim." *Id.* The court views the evidence in the light most favorable to the non-moving party, as "evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in the [non-movant's favor]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As there is no genuine factual dispute between the parties in this matter, the court will proceed to decide the motions as a matter of law.

## ANALYSIS

### I. PLAINTIFF'S *PRIMA FACIE* CASE

Plaintiff brings this action for recovery of the commissions paid to Rice Properties pursuant to the Texas Uniform Fraudulent Transfer Act ("TUFTA").[1] Specifically, Plaintiff argues that under Tex. Bus. & Com. Code Ann. § 24.008, he is entitled to obtain an "avoidance

---

[1] The parties both make reference to the Uniform Fraudulent Transfers Act, but refer to different codifications of the uniform statute. Plaintiff makes reference to the codification of the UFTA in the Utah Code, while Rice Properties makes reference to the UFTA generally and not to any specific state codification. The real estate contracts memorializing the transactions at issue in this matter, however, both indicate that they are to be governed by Texas law. *See* Commercial Contract – Aspen Village Property, Ex. 1, ¶ 22.B (Dkt. No. 61.); Commercial Contract – The Preserve Property, Ex. 2, ¶ 22.B (Dkt. No. 61.) Because this action involves Texas contracts and a substantial proportion of the contacts arising out of the two transactions at issue in this case are with the State of Texas, this court believes a choice of law analysis would result in Texas law being properly applied. The court will make references to the UFTA as it is codified in the State of Texas and will further rely on Texas case law to interpret these statutes.

of the [fraudulent] transfer . . . to the extent necessary to satisfy [his] claim." Tex. Bus. & Com. Code Ann. § 24.008(a)(1) (Vernon 2012).

TUFTA defines a fraudulent transfer as one that is made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code Ann. § 24.005(a)(1). Because a Ponzi scheme is insolvent from its inception, as a matter of law, *see Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006), the mere fact that a debtor is managing a Ponzi scheme is sufficient to infer the intent required to establish a fraudulent transfer under TUFTA. *Wing v. Dockstader*, No. 11-4006, 2012 U.S. App. LEXIS 11390, at *4 (10th Cir. June 6, 2012) (unpublished). *See also Securities and Exchange Commission v. Madison Real Estate Group, LLC,* 647 F. Supp. 2d 1271, 1279 (D. Utah 2009) ("Under the UFTA, a debtor's actual intent to hinder, delay, or defraud is conclusively established by proving that the debtor operated as a Ponzi scheme."). Because Madison was operating as a Ponzi scheme, any transfer made by Madison would be a fraudulent transfer under TUFTA.

When a transfer is fraudulent under TUFTA, creditors who are harmed by the transfer are entitled to obtain, among other remedies, an avoidance of the transfer in the absence of certain defenses specified by statute. *See* Tex. Bus. & Com. Code Ann. § 24.008(a)(1). "[A] receiver in a Ponzi case is defined as a creditor for the purposes of establishing standing" to bring an action for avoidance under TUFTA. *Wing v. Hammons*, No. 2:08CV620 DB, 2009 WL 1362389, at *2 (D. Utah May 14, 2009) (unpublished) (citing *Scholes v. Lehmann*, 56 F.3d 750, 753-55 (7th Cir. 1995)). *See also Dockstader*, 2012 U.S. App. LEXIS 11390, at *3 (affirming standing of receiver). Therefore, Plaintiff is entitled to obtain an avoidance of the transfer of funds for the purchase of the Aspen Village property and The Preserve property in the absence of a legitimate defense from Rice Properties.

II.     **RICE PROPERTIES' SUBSEQUENT TRANSFEREE DEFENSE**

Rice Properties argues that under TUFTA, it is entitled to an absolute defense against avoidance by virtue of being a subsequent transferee of the fraudulent transfer by Madison. Tex. Bus. & Com. Code Ann. § 24.009(a) states:

> (a) A transfer or obligation is not voidable under [TUFTA] against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

Rice Properties argues that this subsection must be read to create two separate defenses. First, a fraudulent transfer is not voidable if it is made to "a person who took in good faith and for a reasonably equivalent value," and second, a fraudulent transfer is not voidable if it is made to "any subsequent transferee or obligee." Rice Properties claims to be a subsequent transferee that is entitled to an absolute defense against this avoidance action.

Rice Properties is correct that Section 24.009(a) creates two separate defenses to an avoidance action brought under TUFTA, but it incorrectly identifies the scope of the subsequent transferee defense. There are two plausible readings of the phrase "any subsequent transferee" in Section 24.009(a). It is possible to read the phrase as a reference to all subsequent transferees of fraudulent transfers, whether they took from an initial transferee who received the transfer in good faith or not. It is also plausible, however, to read the phrase "any subsequent transferee" as referring to only those subsequent transferees who took from "a person who took in good faith and for a reasonably equivalent value."

Where a statute is ambiguous, it is the duty of the court to apply principles of statutory construction to determine its meaning. Courts generally interpret the terms of a statute so as to avoid rendering any terms or phrases superfluous. *See TRW, Inc. v. Andrews*, 534 U.S. 19, 33 (2001) ("We are reluctant to treat statutory terms as surplusage in any setting.") (internal

quotation marks and citation removed); *Moskal v. United States*, 498 U.S. 103, 109 (1990) ("[A] court should give effect, if possible, to every clause and word of a statute.") (internal quotation marks and citation removed); *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985) ("[A] statute should be interpreted so as not to render one part inoperative.") (internal quotation marks and citation removed); *Lamb v. Thompson*, 265 F.3d 1038, 1051 (10th Cir. 2001) ("[I]t is our duty to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section.") (internal quotation marks and citation removed).

The presumption against surplusage is helpful to determine the meaning of "any subsequent transferee" as it is used in Section 24.009(a). Tex. Bus. & Com. Code Ann. § 24.009(b)(2) provides that claimants seeking avoidance under TUFTA may obtain a judgment against "any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." (2012). If Section 24.009(a) provides an absolute defense to all subsequent transferees, as Rice Properties suggests, then Section 24.009(b)(2) would be rendered superfluous. Therefore, Section 24.009(a) must only be referring to subsequent transferees of initial transferees that take "in good faith and for a reasonably equivalent value."

Thus, for Rice Properties to take advantage of the Section 24.009(a) subsequent transferee defense, it must prove that (1) it is a subsequent transferee and (2) that it took from an initial transferee "in good faith and for a reasonably equivalent value."

**1.     Is Rice Properties a Subsequent Transferee?**

Plaintiff argues that Rice Properties cannot take advantage of the subsequent transferee defense because Rice Properties received its commission as an initial transferee of Madison. Rice Properties claims that as the agent of the sellers, and not Madison, it took its commission

from the sellers and is, therefore, a subsequent transferee of the fraudulent transfer from Madison to the sellers.

A person is not a transferee of money until one has "legal dominion or control over the funds; that is, the right to put the money to one's own use." *Newsom v. Charter Bank Colonial*, 940 S.W.2d 157, 165 (Tex. App. 1996) (citing *Sec. First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138, 141 (5th Cir. 1995)). *See also Malloy v. Citizens Bank (In re First Sec. Mortgage Co.)*, 33 F.3d 42, 43-44 (10th Cir. 1994); *Bonded Fin. Serv. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988); *Williams v. Performance Diesel*, No. 14-00-00063-CV, 2002 Tex. App. LEXIS 2735 (Tex. App. April 18, 2002) (unpublished). "A party does not have dominion over the funds until it is in essence, free to invest the whole amount in lottery tickets or uranium stocks, if it wishes." *Newsome*, 940 S.W.2d at 165 (quotation marks and citation omitted). An agent or intermediary who receives money on behalf of another party, and who does not have dominion or control over the use of the money, is therefore not a transferee, but a mere conduit. *See Id.* at 165.

In order for Rice Properties to be a subsequent transferee for purposes of Section 24.009(a), it must have taken the commissions at issue from an initial transferee. Rice Properties argues that the sellers in both the Aspen Village and The Preserve transactions were the initial transferees of funds fraudulently transferred from Madison and that, as the sellers' agent, Rice Properties took from the sellers and is therefore a subsequent transferee. The sellers, however, can be initial transferees only if they had legal control or dominion over the funds at issue before Rice Properties had legal control or dominion over them.

Determining whether a recipient of funds is an initial transferee can be a difficult question. While fraudulent conveyance remedies in the United States Bankruptcy Code are not

identical to those available under state fraudulent transfer statutes, many courts have looked to bankruptcy decisions to determine whether a party is an initial transferee, a subsequent transferee, or a mere conduit.

In *Hooker Atlanta Corp. v. Hocker (In re Hooker Inv., Inc.)*, 155 B.R. 332 (Bankr. S.D.N.Y. 1993), the Bankruptcy Court held that a real estate broker who was the agent of the seller of a piece of property was not the initial transferee of the buyer of the property, although the broker's commission was paid directly from funds deposited by the buyer into a valid escrow account. The court reasoned that upon closing, when all the conditions of escrow had been completed, all legal and equitable title to the funds deposited by the buyer with the escrow agent immediately vested in the seller. *Id.* at 340-41. At this time, the escrow agent became the sole agent of the seller and the seller had complete dominion and control over the funds, even though it did not have physical possession of them. *Id.* The seller was therefore the initial transferee of the funds and could distribute them as he wished. *Id.* With respect to the payment of the broker's commission, the court said:

> [The seller] chose to simplify the number of steps in this transaction by having [the escrow agent] pay [the real estate broker] directly out of the escrowed deposit. Were it not for this simplification, [the seller] would have received the deposit from [the escrow agent], would have received the remainder of the purchase price from [the buyer] and would have satisfied his obligation to pay [the real estate broker]. The actual disposition of the escrowed funds does not alter the fact that once the closing occurred and the conditions of the escrow were met, both legal and equitable title to the funds on deposit was vested in [the seller]. [The seller] was free to do with the funds whatever he saw fit, which, in this case, was to pay a portion of them to [the real estate broker] and the balance of them to [the buyer]. Thus, the transfer to [the real estate broker] was not a transfer by [the buyer], but a transfer by [the seller], albeit through the intermediary of [the escrow agent]. As a result, [the real estate broker] cannot have been an initial transferee of [the buyer's] property. If [the real estate broker] can be considered a transferee of [the buyer's] property at all, it is a subsequent transferee . . . .

*Id.* (citation ommitted).

Plaintiff has urged the court to distinguish *Hooker Investments* from the matter at hand on the ground that in *Hooker Investments* the transfer of escrow funds directly to the real estate broker came about as a result of an alteration of the escrow agreement after the buyer had made its initial escrow deposit. This, Plaintiff argues, shows that the seller had dominion and control over the funds while the funds were in escrow. In contrast, the transfer of escrow funds to Rice Properties in connection with the transactions at issue in this matter were the result of an agreement made by the parties prior to any funds being deposited with an escrow agent. Furthermore, the escrow agreement made clear that any alterations to the commission arrangement required the written consent of the real estate brokers, including Rice Properties. Plaintiff argues that in this matter, the sellers had given up their dominion and control of the funds that were to be paid to Rice Properties before they were ever deposited in escrow, thus precluding them from being initial transferees of those funds.

A similar attempt to distinguish *Hooker Investments* was made in *McCarty v. Richard James Enter., Inc. (In re Presidential Corp.)*, 180 B.R. 233, 239 (B.A.P. 9th Cir. 1995). In that case, the Bankruptcy Appellate Panel rejected such a distinction, pointing out that *Hooker Investments* "does not rely upon the fact the escrow agreement was changed to indicate the seller had dominion or control over the property." *Id*. The court held that "where an agent holds property for the principal's sole benefit, the principal has dominion or control over the property, and the irrevocability of the principal's instructions to the agent are irrelevant." *Id*.

The court finds both the *Hooker Investments* and *Presidential Corporation* cases persuasive. Once all the conditions of transfer of the Aspen Village and The Preserve properties were accomplished, the funds that had been placed in escrow to purchase the properties immediately came under the dominion and control of the sellers. At that point, the escrow agent,

who had physical possession of the funds, became the sole agent of the sellers. It was only at the direction of the sellers that funds were then transferred to Rice Properties by the escrow agent. The fact that the sellers' directions to the escrow agent were memorialized in a contract made irrevocable without the consent of Rice Properties does not negate the status of the sellers as initial transferees. Therefore, Rice Properties is a subsequent transferee of the sellers, entitled to the defenses available to it in Section 24.009.

### 2. Did the Sellers Take in Good Faith and for a Reasonably Equivalent Value?

In order to take advantage of the subsequent transferee defense established in Section 24.009(a), Rice Properties must also have taken from an initial transferee who took in good faith and for value. The Texas Business and Commerce Code defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Tex. Bus. & Com. Code Ann. § 1.201 (2012). In the context of TUFTA, Texas courts have indicated that "good faith" means "that a transaction was made without a secret agreement." *Yokogawa Corp. of Am. V. Skye Int'l Holdings, Inc.*, 159 S.W.3d 266, 269-70 (Tex. App. 2005) (citing *Hawes v. Central Tex. Prod. Credit Ass'n*, 503 S.W.2d 234, 236 (Tex. 1973)). *But see GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, No. 3:09-CV-572-L, 2011 WL 124237 (N.D. Tex. Jan. 13, 2011) (unpublished) (distinguishing *Hawes* and applying an objective good faith standard).

There is no evidence in the record that the Alpine Village and The Preserve transactions were executed pursuant to a secret agreement with Madison. The transactions appear to be the result of arms-length negotiations between the parties, and there is no indication that the properties were sold above or below the market price. Furthermore, Plaintiff is not seeking the avoidance of the real estate transactions underlying the transfer of commissions to Rice Properties in this action. Even if the court were to apply a broader objective good faith standard,

there is no evidence that the sellers in the Alpine Village and The Preserve transactions engaged in any wrongdoing or were aware or should have been aware of any wrongdoing on the part of Madison at the time of the transfers.

Based on the record in this matter, the court finds that the sellers in the Alpine Village and The Preserve transactions took the sale proceeds from Madison in good faith and for value. As a subsequent transferee of the sellers in these transactions, Rice Properties is entitled to an absolute defense to Plaintiff's avoidance action pursuant to Section 24.009(a) regardless of whether they should have known of Madison's fraud.

The court notes that the result in this action is consistent with principles of equity. As noted above, Plaintiff, as Receiver for Madison, is not seeking the avoidance of the property transactions that gave rise to the commissions received by Rice Properties. Nor, as far as the court can tell, is Plaintiff offering to return the real property that was the subject of the Alpine Village and The Preserve transactions to the sellers. Rice Properties was hired by the sellers to facilitate the sale of property to Madison, and there is no dispute that Rice Properties fulfilled its duties to the sellers in relation to these transactions. As a result, Madison obtained, and Madison's Receiver still possesses, real property worth approximately what Madison paid for it. TUFTA does not give Plaintiff the right to seek a judgment which would result in the retention of value above what was initially contemplated by the transactions at issue.

## CONCLUSION

For the reasons stated above, the court hereby DENIES Plaintiff's motion for summary judgment (Dkt. No. 58) and GRANTS Defendant Rice Properties' motion for summary judgment (Dkt. No. 60).

DATED this 8th day of June, 2012.

                                              BY THE COURT:

                                              _____
                                              Clark Waddoups
                                              United States District Judge